IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 1:18-cv-01225-MSK-NYW

RUTHIE JORDAN,
MARY PATRICIA GRAHAM-KELLY, and
COLORADO CROSS-DISABILITY COALITION, A COLORADO NONPROFIT
CORPORATION,

    Plaintiffs,

v.

JEFF SHRADER,
PATRICK FIRMAN, and
CITY AND COUNTY OF DENVER, INCLUDING ITS POLICE DEPARTMENT,

    Defendants.

_____

OPINION AND ORDER
_____

**THIS MATTER** comes before the Court pursuant to Plaintiff Ruthie Jordan's Motion for Attorney Fees and Costs **(# 73)**, a Response by Defendants Patrick Firman and City and County of Denver (collectively, "Denver") **(# 77)**, and Ms. Jordan's reply **(# 78)**. Also pending is Ms. Jordan's unopposed Motion for Leave to Restrict **(# 76)** public access to certain exhibits attached to her fee motion.

The Court assumes the reader's familiarity with the proceedings to date in this action. Greatly summarized, in May 2018, Ms. Jordan and other plaintiffs, all of whom are deaf or hard of hearing, sued Denver (and other entities) pursuant to Title II of the Americans With Disabilities Act ("ADA"), claiming that the Denver County Sheriff lacks appropriate procedures and policies to allow for deaf detainees to effectively communicate with staff at the Denver County Jail. In August 2019, Ms. Jordan accepted **(# 64)** Denver's Offer of Judgment in the

1

amount of $10,000, effectively terminating this litigation.  The only matter remaining is the appropriate measure of attorney fees payable to Ms. Jordan pursuant to 42 U.S.C. § 1988 and the stipulated judgment.  Ms. Jordan's counsel claim a total of approximately $227,000 in fees, reflecting two counsel (at hourly rates of $475 and $395) and a legal assistant (at a rate of $225), plus costs in the amount of $6,384.99.  Denver challenges the reasonableness of the rate charged for the legal assistant, and the total number of hours claimed by counsel, and suggests that an appropriate fee award would not exceed approximately $18,000.  Denver also challenges certain items of costs claimed by Ms. Jordan, suggesting that an appropriate award of costs would be limited to $4,451.88.

Attorney fee claims under the ADA are analyzed under the familiar "lodestar" analysis, by which the Court first determines a presumptive fee award by multiplying the reasonable number of hours expended by counsel and staff by a reasonable hourly rate, and then adjusts that lodestar figure in certain circumstances.  *Roe v. Cheyenne Mountain Conf. Resort, Inc.*, 124 F.3d 1221, 1233 n. 8 (10th Cir. 1997).  The burden is on Ms. Jordan, as the party seeking fees, to establish the reasonableness of the hours and rates claimed.  *Case v. Unified School Dist.*, 157 F.3d 1243, 1249-50 (10th Cir. 1998).

Turning first to hourly rates, Ms. Jordan seeks fees as follows: for attorney Kevin Williams, a rate of $475 per hour; for attorney Andrew Montoya, a rate of $395, and for attorney/legal assistant Kara Gillon, a rate of $225 per hour.  Denver challenges only Ms. Gillon's rate as unreasonable.

Ms. Jordan explains that it bills its legal assistants at a rate of $160 per hour, but believes that Ms. Gillon warrants a higher rate because she possesses a law degree, but is not licensed to practice in Colorado.  The Court agrees with Denver that the tasks performed by Ms. Gillon

typically involved routine clerical matters such as proofreading and cite-checking, scheduling and calendaring, and other tasks that did not draw meaningfully draw upon her legal training. Accordingly, the Court finds that an hourly rate of $160, rather than $225, is reasonable for Ms. Gillon's time.

Next, the Court considers the reasonable hours expended by counsel in this case. The two sides have vastly different opinions about the number of tasks reasonably performed by counsel. A lengthy and detailed analysis of each point of contention and each challenged billing entry is neither productive nor warranted. It is sufficient to observe that the Court agrees, in considerable part, with Denver that there are substantial portions of counsel's billings that are not reasonably compensable.

First, Ms. Jordan's counsel seek compensation for considerable amounts of time that, by their description, completely or predominantly involve claims by plaintiffs other than Ms. Jordan or claims against defendants other than Denver.

Second, counsel have improperly billed large amounts of time – amounting to tens of thousands of dollars – for small increments of time for sending or reviewing purely internal e-mails. In cases involving several-member legal teams, team members understandably must confer and implementing the maxim "two heads are better than one" the conference may bring new insight or value to the representation. But legal teams with multiple members must always be cognizant that the need for routine intra-office e-mails or brief conversations advising of "case status" or conveying assignments and the like often add little or no value; they are just a form of overhead created by the structure of the legal team. For example, communicating by email to convey an assignment or a direction may not justify the charge of by both sender and recipient. The motion here shows no billing judgment recognizing the difference between office business

communication and communications that are essential to or advanced the client's interests. To reflexively deem all intra-office communication compensable at the hourly rate of both the sender and the recipient would effectively encourage counsel to involve as many people as possible in every case and to utilize internal communication as a profit center without regard to the nature, content and the purpose of communication, or whether such communication is necessary or duplicative.  It is true that some circumstances require the involvement of many individuals to adequately represent the client, but in the absence of any showing that all of intra-office communications billed in this matter (especially where billed  by both sender and recipient) or evidence of exercise of billing judgment to avoid unnecessary or duplicative charges, the Court finds that a significant portion of the intra-office communication charges were unnecessary and duplicative.

This problem is also evident with regard to the involvement of multiple professionals for tasks that could be completed by one. For example, no necessity has been shown for multiple professionals – three in some circumstances -- to all charge for initial consultations, deposition preparation sessions, Ms. Jordan's deposition, mediation, and other proceedings.  The Court sees no reason why, for example, three persons were required to bill more than 10 hours each simply for defending Ms. Jordan's deposition.

Finally, some (although not necessarily all) time spent by counsel drafting proposed settlement documents was unnecessary, particularly where there was no indication that a settlement in principle had been discussed or was imminent.

Having identified areas in which a substantial reduction of the number of hours claimed by Ms. Jordan's counsel is appropriate, the Court pauses to note, that the litigation cannot be reduced to a mere handful of brief tasks as Denver suggests.  Although Ms. Jordan's claims were

resolved fairly quickly, there were a number of interceding procedural events, both routine (*e.g.* scheduling and discovery conferences, review and analysis of of written discovery) and unusual (*e.g.* the need to obtain Ms. Jordan's sealed criminal records) that are not fully accounted for by Denver's proposed fee award.

Finally, the Court notes that Ms. Jordan's recovery in this case is relatively small - a modest monetary payment of $10,000. The Court is mindful of the fact that, particularly in civil rights cases, the value of the vindication of deprived rights does not necessarily correspond to the monetary value of the case. At the same time, Ms. Jordan's Complaint sought a broad array of injunctive relief, including requests that the Court "establish and enforce compliance with policies, practices, and procedures" to ensure the protection of the rights of deaf and hard-of-hearing individuals, but the judgment she accepted offered no equitable or policy-based relief whatsoever. Even Ms, Jordan's reply brief seems to suggest that she was intending to seek broad relief in order to address Denver's "failures to provide her with effective communication and appropriate auxiliary aids and services in circumstances where they were supposed to, including notifying others [ ] that she would need an ASL sign language interpreter." Yet beyond the payment of a small sum, representing only about 20 hours' worth of Mr. Williams' billing time, Ms. Jordan did not secure any further relief. In such circumstances, the reasonableness of any fee award must give due consideration to the degree of Ms. Jordan's success. *See Farrar v. Hobby*, 506 U.S. 103, 114-15 (1992).

Giving due regard to the findings above, the Court finds that a wholesale reduction of 65% of all hours claimed, over and above the reduction of Ms. Gillon's requested rate, strikes the appropriate balance between reducing or eliminating substantial instances of redundant or

5

unnecessary billing entries by counsel, conforming the fee award to the degree of success obtained, and ensuring that counsel are fully compensated for all reasonable hours expended.

Implementing that reduction is made more difficult insofar as, as best the Court can determine, there is no summary in the record of individual timekeeper hours.  Accordingly, the Court calculates the reasonable fee as follows:

1.  Relying on Docket #77-4, which appear to be all billing records for timekeeper LPA at $225 per hour – a timekeeper the Court construes to be Ms. Gillon – a total of 220.5 hours is requested, for a total value of $52,694.[1]  Reducing that timekeeper's rate to $160 per hour reduced that total value to $35,280, a difference of roughly $14,332.

2.  Per Docket # 73-14, the total amount of fees requested by Ms. Jordan for all timekeepers is $221,245.  Reducing that total by $14,332 yields a figure of $209,913.  This figure reflects the total amount of Ms. Jordan's fee request when accounting for Ms. Gillon's reduced hourly rate.

3.  Reducing the total amount of hours claimed by 65%, as set forth above, reduces the $209,293 figure to $73,469.  Given the nature of the tasks reasonably performed during this litigation and the amount recovered by Ms. Jordan, the Court finds that this reflects a reasonable lodestar figure.  The Court further finds that no adjustments to the lodestar figure are warranted, resulting in the Court awarding attorney fees to Ms. Jordan in the amount of $73,469.

Turning to costs, Denver challenges the following items:

• A total of $368.87 attributable to various parking, mileage, and meal expenses.

---

[1]      By the Court's math, this sum should be $49,612. The Court is unable to account for the discrepancy.

• Two invoices, for $950 and $873, for which Ms. Jordan provided no particular details regarding the purpose of the invoiced services.

• An August 22, 2019 invoice for $280 for interpreter fees.

In reply, Ms. Jordan does not specifically address the three challenged invoices or describe the services secured, but makes a generalized argument that because her attorneys are "public interest counsel who do not charge clients for representation while operating on razor-thin nonprofit budgets," they should be permitted to recover "the thousands of dollars in interpreter costs that attend cases involving deaf individuals" by shifting those costs to Denver. This argument effectively concedes Denver's contention that the invoiced services relate to securing sign language interpreters for internal communications with Ms. Jordan (or perhaps others), not for deposition or mediation proceedings for which, it is apparently undisputed, Denver already provided interpreters.

The Court denies Ms. Jordan's request for reimbursement of the three invoices for two reasons. First, Ms. Jordan has not even meaningfully identified what services were provided pursuant to these invoices, who they were provided to, and for what purposes. Thus, she has failed to carry her burden to show that such costs were reasonably incurred in this case. Second, the Court rejects Ms. Jordan's argument that, simply because her counsel are "public interest" or operate on "razor-thin budgets," they are entitled to recover costs that would not otherwise be awarded. Accordingly, the Court reduces Ms. Jordan's claim for costs by $2,103, the total of the three challenged invoices.

As to the parking, meal, and other costs challenged by Denver, Ms. Jordan replies by arguing that these are compensable "travel" costs. Although such costs may be awarded upon a showing that costs of that type are "normally billed to a private client in the local area," it is

7

incumbent upon Ms. Jordan to show, by affidavit, that this is the case in Denver. *Vialpando v. Johanns*, 619 F.Supp.2d 1107, 1130 (D.Colo. 2008).  The affidavit of Darold Kilmer, which Ms. Jordan offers as evidence of prevailing practices in Denver, states only that "the costs claimed in this case are in line with the types of costs typical in litigation of this kind."  Putting aside the generalized and conclusory nature of this statement – one which sweeps the entirety of the various categories of items contained in the cost request up in a single sentence --  the Court is unable to parse what Mr. Kilmer meant to say. Stating that costs are "in line with" "types of costs" that "are typical" does not amount to an assertion that such costs are typically billed to clients.  Mr. Kilmer may instead be stating that the claimed costs are "typical" in amount or that they reflect the "types of costs" attorneys practicing in this area can typically expect to incur, although not necessarily charge to clients.  Accordingly, the Court declines to award the challenged $368.87 in parking, meals, and other costs as identified by Denver's response.

Denver argues that the total cost award should be limited to $4,451.88.  Reducing Ms. Jordan's request for $6,384.89 in costs by $2,103 (the challenged invoices) and $368.87 (the challenged parking and meal costs), yields a cost award of $3,913.  Being unable to identify the source of any discrepancy, the Court instead adopts Denver's confession to $4,451.88 in costs and awards that sum to Ms. Jordan.

Accordingly, Ms. Jordan's motion for fees and costs is granted to the extent that the Court awards her $73,469 in attorney fees and $4,451.88 in costs.

As to Ms. Jordan's motion to restrict access, the motion seeks to restrict access to certain records relating to Ms. Jordan's arrest and detention, and an expert report addressing her communicative abilities.  The Court finds that these documents raise some privacy issues regarding Ms. Jordan's health status, and are of no apparent relevance to her request for fees and

costs. As a result, the Court grants the motion to place them under a Level 1 restriction. The Court denies Ms. Jordan's motion with regard to Docket t# 74-3, a policy statement by the Denver Sheriff's Department regarding inmates with disabilities. The Court can discern no privacy interests implicated by public disclosure of this document.

For the foregoing reasons, Ms. Jordan's Motion for Fees and Costs **(# 73)** is **GRANTED IN PART**, insofar as the Court awards Ms. Jordan $73,469 in attorney fees and $4,451.88 in costs against Denver. Ms. Jordan's Motion to Restrict **(# 76)** is **GRANTED IN PART AND DENIED IN PART**. The Clerk of the Court shall lift the provisional restriction placed on Docket # 74-3.

Dated this 1st day of November, 2020.

**BY THE COURT:**

_____

Marcia S. Krieger
Senior United States District Judge